UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DERRICK SODHI,                    )
    Plaintiff,                   )
                             )
        v.                       )  Civil Action No. 1:13cv527
                             )
CAROLYN W. COLVIN,                )
Acting Commissioner of           )
Social Security,                 )
    Defendant.                   )

MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), Derrick Sodhi ("plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("defendant") denying plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434, 1381-1383.  Both parties filed motions for summary judgment (Dkts. 11 and 13) with briefs in support (Dkts. 12 and 14), which are now ready for resolution.  On March 13, 2014, United States District Judge Claude M. Hilton referred this matter, with consent of both parties, to the undersigned United States Magistrate Judge. (Dkt. 17.)  For the following reasons, plaintiff's Motion for Summary Judgment (Dkt. 11) shall be DENIED and defendant's Motion for Summary Judgment (Dkt. 13) shall be GRANTED.

I.   <u>PROCEEDURAL BACKGROUND</u>

Plaintiff filed his DIB application on January 18, 2010, alleging disability as of April 1, 2009. (Administrative Record[1] ("R.") 11, 53, 136-37, 121-22, 141.) Plaintiff's claims were initially denied on July 29, 2010, and again upon reconsideration on March 4, 2011. (<u>Id.</u> at 70-72, 78-80, 82-84.) Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ") on March 28, 2011. (<u>Id.</u> at 85.) On May 18, 2011, plaintiff applied for SSI. (<u>Id.</u> at 11.)

ALJ Larry K. Banks held a hearing on December 5, 2011, during which he received testimony from plaintiff, represented by counsel, and Dina P. Leviton, an impartial vocational expert ("VE"). (<u>Id.</u> at 26-52.) On April 10, 2012, the ALJ issued his decision finding that plaintiff was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act from April 1, 2009, through the date of his decision. (<u>Id.</u> at 11-21.) The Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied plaintiff's request for review of the ALJ's decision on February 26, 2013. (<u>Id.</u> at 1-3.) Having exhausted his administrative remedies, plaintiff filed a Complaint for judicial review on April 30, 2013. (Dkt. 1.) Defendant answered on September 13, 2013, (Dkt. 5), and the

---

[1] The certified administrative record was filed under seal on September 13, 2013, pursuant to Local Civil Rules 5(B) and 7(C)(1). (Dkt. 6.)

parties filed cross-motions for summary judgment.  (Dkts. 11 and 13.)  The matter is now ripe for adjudication.

## II.  STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the Acting Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance.  Hays, 907 F.2d at 1456.  While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d at 589 (4th Cir. 1996)).  The correct law to be

3

applied includes the Act, its implementing regulations, and
controlling case law.  <u>Coffman</u>, 829 F.2d at 517-18.  Moreover,
the Acting Commissioner is charged with evaluating the medical
evidence and assessing symptoms, signs, and medical findings to
determine the functional capacity of the claimant.  <u>Hays</u>, 907
F.2d at 1456-57.  With this standard in mind, the Court next
evaluates the ALJ's findings and decision.

III. <u>ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The ALJ is required to employ a five-step sequential
evaluation in every Social Security disability claim analysis to
determine the claimant's eligibility.  The Court examines this
five-step process on appeal to determine whether the correct
legal standards were applied, and whether the resulting decision
of the Acting Commissioner is supported by substantial evidence
in the record.  20 C.F.R. §§ 404.1520 and 416.920.  In
accordance with the five-step sequential analysis, the ALJ made
the following findings of fact and conclusions of law.

First, plaintiff has not engaged in substantial gainful
activity ("SGA") since April 1, 2009, the alleged onset date.
(R. 13.)  Second, plaintiff has the following severe
impairments: history of right clubfoot, right lower extremity
cellulitis, obesity, and sciatica with chronic low back pain.
(<u>Id.</u>)  Third, the ALJ found that plaintiff does not have an
impairment or combination of impairments that meets or medically

4

equals the severity of the one of the listed impairments in 20
C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 16.)  Fourth,
plaintiff has the residual function capacity ("RFC") to perform
sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and
416.967(a), except plaintiff requires a "sit/stand option; stand
45-60 minutes before alternating to sitting for 45-60 minutes."
(Id. at 16.)  The ALJ also found that plaintiff cannot climb
ropes, ladders, or scaffolds, can "perform stooping on an
occasional basis," and is limited to performing unskilled tasks
"[d]ue to pain and side effects of medication." (Id.)  Fifth,
while plaintiff is unable to perform any past relevant work,
there are jobs that exist in significant numbers in the national
economy that plaintiff can perform.  (Id. at 19-20.)  Therefore,
the ALJ determined that plaintiff has not been under a
disability, as defined in the Social Security Act, from April 1,
2009, through April 10, 2012, the date of the ALJ's decision.
(Id. at 21.)

## IV.  RELEVANT FACTUAL BACKGROUND

Plaintiff was 35 years old when the ALJ issued his
decision.  (R. 29, 121-22.)  Plaintiff has a high school
education, completed two years of classes at Computer Learning
Center, and worked in the past as a cab driver, mortgage broker,
Home Depot employee, and order puller for a software company.
(Id. at 31-32, 48-49, 143, 149-56.)  When he applied for

5

benefits in 2010, plaintiff alleged disability since April 1,
2009, due to osteoarthritis, cellulitis, and septic strep of the
blood.[2] (Id. at 55, 121, 141.)

On December 5, 2011, plaintiff testified to having a right
club foot, "bad pain" in his right foot, sleep apnea, knee
problems, cellulitis, panic attacks, and leg swelling. (Id. at
31-34, 44-46.) At the time of the hearing, he was five feet ten
inches tall and weighed slightly less than 300 pounds. (Id. at
41-42.) Plaintiff testified that he cannot stand or walk for a
lengthy period and needs to elevate his legs throughout the day.
(Id. at 35-37.) However, he also stated that he is able to
"walk maybe half a mile," help his wife care for her
grandmother, coach a youth basketball team, and alternate from
sitting to standing while coaching. (Id. at 37, 42-44.)

The ALJ received testimony from Dina Levington, a VE, at
the hearing on December 5, 2011. (Id. at 48-52.) The VE stated
that an individual with plaintiff's impairments and limitations
can perform unskilled, sedentary work in the national economy.
(Id. at 49-50.) The number of identified sedentary jobs would
not change if the hypothetical person needed to elevate his foot
at stool level during the workday. (Id. at 50.)

In reaching his decision, the ALJ analyzed medical reports

---

[2] Despite alleging disability as of April 1, 2009, plaintiff
worked 40 hours per week answering telephones at the Red Top Cab
Company between April 2009 and September 15, 2009. (R. 169.)

from 2006 through 2011, including documents regarding foot, leg, and back pain, pneumonia, and a 2006 bypass surgery for plaintiff's obesity. (Id. at 13-15.) The ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the his RFC assessment. (Id. at 17.) Specifically, the ALJ noted that plaintiff often engaged in activities inconsistent with his allegations of disability, such as performing manual labor, helping friends move, and coaching a youth basketball team. (Id. at 18.) Furthermore, the record contained "little evidence to support [plaintiff's] assertion that he [needed] to elevate his right leg above desk level," and there was conflicting evidence about the swelling in plaintiff's lower extremity. (Id. at 17-18.)

Additionally, the ALJ recognized evidence to suggest that plaintiff was engaging in drug seeking behavior. For example, in 2010, Dr. Gallagher indicated that plaintiff exhibited this behavior by "paging [him] at all hours" and not taking his prescribed narcotics in the proper amounts. (Id. at 18, 446-56.) When Dr. Gallagher informed plaintiff that he would not provide him with more narcotics, plaintiff stopped seeing him and began seeing Dr. Meyers instead. (Id.) On February 11,

7

2010, Dr. Meyers discussed with plaintiff that if he requested additional narcotics, he would need to sign a narcotics use form.  (Id. at 18.)

## V.   ANALYSIS

Plaintiff raises two issues on review.  First, he argues that the ALJ failed to properly consider plaintiff's obesity. Second, plaintiff claims that the ALJ erroneously assessed plaintiff's RFC because he both (i) failed to set forth a narrative discussion describing supportive evidence, and (ii) made contradictory findings regarding plaintiff's sedentary work requirements.  Each argument is addressed in turn.

## A. The ALJ Properly Considered Plaintiff's Obesity

Plaintiff first argues that the ALJ did not sufficiently consider his obesity.  Specifically, plaintiff claims that pursuant to Social Security Ruling ("S.S.R.") 02-1p, the ALJ was required to further consider plaintiff's obesity after determining that it was a severe impairment at step two of the sequential evaluation process.  (Dkt. 12 at 3-5.)  According to plaintiff, the ALJ failed to properly assess the effect of plaintiff's obesity on his "ability to perform routine movement and necessary physical activity within the work environment, as required."  (Id. at 4-5.)

Social Security Ruling 02-1p, titled "Evaluation of Obesity," states that obesity is a medically determinable

8

impairment and must be considered by the ALJ during the sequential evaluation process.[3]   S.S.R. 02-1p, 2002 WL 34686281. It provides, in part:

> We will consider obesity in determining whether:
>
> • The individual has a medically determinable impairment. See question 4.
> • The individual's impairment(s) is severe. See question 6.
> • The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. See question 7. (We use special rules for some continuing disability reviews. See question 11.)
> • The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy. However, these steps apply only in title II and adult title XVI cases. See questions 8 and 9.

Id., at *3.  Furthermore, "an assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" and on a "regular and continuing basis."  Id., at *6.  A "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.

Plaintiff claims that the ALJ did not evaluate "the effect obesity had upon the Plaintiff's ability to perform routine movement and necessary physical activity within the work

---

[3] Defendant considers, in sequence, whether a claimant (1) worked during the period of alleged disability, (2) had a severe impairment, (3) had an impairment that met or equaled the requirements of a listed impairment, (4) could return to past work, and (5) if not, whether he could perform other work in the national economy.  Bowen v. Yucker, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520, 416.920.

environment," and never explained "how the Plaintiff's obesity
was taken into account in reaching the residual functional
capacity assessment." (Dkt. 12 at 5.) Plaintiff uses the ALJ's
following statement as proof that he failed to adequately assess
obesity:

> As indicated in SSR 02-1p, obesity may have an adverse
> impact upon co-existing impairments. For example,
> obesity may affect the cardiovascular and respiratory
> systems, making it harder for the chest and lungs to
> expand, and imposing a greater burden upon the heart.
> An individual with obesity and arthritis affecting a
> weight-bearing joint may have more pain and limitation
> that might be expected from arthritis alone. In
> addition, obesity may limit an individual's ability to
> sustain activity on a regular and continuing basis
> during an eight-hour day, five-day week or equivalent
> schedule. These considerations have been taken into
> account in reaching the following conclusions herein.

(R. 19.)

Contrary to plaintiff's assertion, the ALJ's analysis is
rife with considerations of plaintiff's obesity and the effect
that it had on his health and functional limitations. The ALJ
explicitly clarified that he took "[t]hese considerations"—
namely, plaintiff's obesity and its limiting effects—"into
account in reaching [his] conclusions." (Id.) For example, the
ALJ stated:

> Regarding his obesity, at his hospital admission in
> December 2009, [plaintiff] weighed 390 pounds. He
> reported his usual weight was 400 pounds. It was
> noted that [plaintiff] previously underwent bypass
> surgery for his obesity in 2006 (Exhibit 1F).
> Physical therapy notes reflect that [plaintiff]'s
> obesity was contributing to his symptoms pertaining to

10

> his sciatica and left lower extremity pain (Exhibit
> 2F). Medical entries from Dr. Gallagher indicate that
> [plaintiff] had edema in his left knee and was unable
> to fully extend due to his body habitus (Exhibit 5F).

(Id. at 15.) Similarly, he recognized that plaintiff "testified

he is five feet ten inches tall and weighs 300 pounds," and that

the record showed that plaintiff experienced "decreased pain and

symptoms with exercises." (Id. at 18.)

The ALJ also considered the effects of plaintiff's obesity

in light of the various activities that plaintiff engaged in

since the alleged onset date. For example, the ALJ noted that

during the time period when plaintiff was allegedly disabled, he

took part in physically demanding activities such as "work tasks

involv[ing] moving furniture," performing "manual labor," being

the "head coach of a youth basketball team," and "help[ing]

friends move, which included walking up stairs and lifting heavy

objects." (Id.) The ALJ specifically found that plaintiff

"continued to engage in activities inconsistent with the degree

of his allegations since the alleged onset date." (Id.)

Most importantly, the ALJ took obesity into consideration

at all requisite steps of the sequential evaluation process. As

aforementioned, he determined at step two that plaintiff's

obesity constituted a severe impairment after reviewing ample

medical and nonmedical evidence. (Id. at 15.) At step three,

the ALJ found that plaintiff's impairments, which included

obesity, did not meet or equal any listed impairments, and that plaintiff's limitations restricted him to unskilled, sedentary work with a sit/stand option, only occasional stooping, and no climbing of ropes, ladders, or scaffolds.  (Id.)  Finally, at steps four and five, the ALJ took plaintiff's RFC determination— which included plaintiff's obesity and other limitations—into consideration to find that he was capable of engaging in unskilled, sedentary work that existed in significant numbers in the national economy.  (Id. at 19-20.)

Therefore, the ALJ clearly took plaintiff's obesity "into account in reaching [his] conclusions," as he correctly noted was required by S.S.R. 02-1p.  (Id. at 19.)  Because the ALJ amply considered the effects of plaintiff's obesity, the Court finds that the ALJ did not err in this regard.

B. Substantial Evidence Supports the ALJ's RFC Evaluation

Plaintiff next argues that the ALJ erroneously assessed plaintiff's RFC for two reasons.  First, he claims that the ALJ "failed to set forth a narrative discussion describing how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence."  (Dkt. 12 at 8.)  Second, he alleges that the ALJ's decision regarding sedentary work is "contradictory on its face."  (Id. at 9-10.)  Defendant, meanwhile, asserts that the ALJ did not err in assessing plaintiff's RFC.  (Dkt. 14 at 14-16.)  Each argument is

12

addressed in turn.

Residual functional capacity is generally defined as the most that an individual is able to do despite limitations caused by his or her impairments.  20 C.F.R. §§ 404.1545, 416.945. Social Security Ruling 96-8p states that

> Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

S.S.R. 96-8p, 1996 WL 374184, at *1.  To determine RFC, "it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level."  Id., at *3.  That assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id., at *7.  The final responsibility for determining a claimant's RFC is reserved to the ALJ, who must provide an adequate explanation to support the restrictions contained in the RFC assessment.  20 C.F.R. §§ 404.1545(a), 416.945(a); Flaming v. Barnhart, 284 F. Supp. 2d 256, 271–72 (D. Md. 2003).

Plaintiff first argues that the ALJ's analysis did not

13

include a narrative discussion citing specific medical facts and nonmedical evidence, and thereby provided no more than a "naked conclusion, devoid of analysis." (Dkt. 12 at 8.) However, a review of the ALJ's decision decisively shows that he provided a thorough examination of the specific medical and nonmedical evidence that supported his conclusion. (R. 13-19.) For example, he provided a comprehensive review of supporting medical evidence, including but not limited to:

- Documents pertaining to plaintiff's cellulitis and pain in his right lower extremity, including entries from Dr. Gallagher, records from his hospital admissions, and physical therapy notes;

- Medical records demonstrating plaintiff's hypertension, hospitalization for pneumonia, blood pressure treatment, and prescriptions for anxiety medications;

- Reports documenting plaintiff's diagnosis of and treatment for sciatica, x-rays showing no evidence of knee fracture or dislocation, x-rays showing stable foot deformity, and physical examination results confirming left lower back tenderness;

- Medical records showing that plaintiff's "burning" in his left leg had subsided and that his back issues were improving as of March 2010; and,

- Records from emergency room and doctor visits records from 2008 through 2010 regarding swelling in plaintiff's leg.

(Id. at 14-15, 17-19.)

Similarly, the ALJ reviewed and analyzed ample nonmedical evidence, such as:

- Plaintiff's self-reported feelings of pain, swelling in his legs, and panic attacks;

- Plaintiff's testimony that standing and walking too long exacerbated his knee and foot pain;

- Evidence demonstrating plaintiff's ability to alternate between sitting and standing while coaching a youth basketball team;

- Documents showing that plaintiff's employment as of March 2010 involved manual labor; and,

- Plaintiff's reports that he helped friends move in August 2010, which included walking up stairs and lifting heavy objects.

(Id. at 17-19.)  The ALJ therefore sufficiently discussed specific medical and nonmedical evidence to support his RFC assessment.[4]  Accordingly, substantial evidence exists to support

---

[4] Plaintiff seems to suggest that the ALJ was required to perform a function-by-function analysis in addition to setting forth a narrative discussion.  (Dkt. 12 at 8.)  However, plaintiff offers no legal support for this contention, and the ALJ was only required to provide a narrative discussion describing

the ALJ's findings, and he did not err in presenting his
decision.

Second, plaintiff contends that the ALJ's RFC assessment
contradicts Social Security Ruling 83-10.  (Dkt. 12 at 9-10.)
That Ruling provides, in part, that sedentary work includes jobs
where "walking and standing are required occasionally," and that
"periods of standing or walking should generally total no more
than about 2 hours of an 8-hour workday, and sitting should
generally total approximately 6 hours of an 8-hour workday."
S.S.R. 83-10, 1983 WL 31251, at *5.  Plaintiff argues that the
ALJ violated this Ruling by determining that plaintiff "required
the ability to alternate his position from sitting to standing
at 45 to 60 minute intervals."  (R. 10.)  Therefore, he claims,
the ALJ "necessarily determined that the Plaintiff required the
ability to stand up to four hours in an eight-hour day," thereby
contradicting S.S.R. 83-10's requirement that standing or
walking "should generally total no more than about 2 hours of an
8-hour workday" for a sedentary work capacity.  (Dkt. 12 at 10.)

---

plaintiff's symptoms and medical evidence.  See, e.g., Fleming
v. Barnhart, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003) ("An RFC
assessment must include a narrative discussion describing how
the evidence supports each conclusion, citing specific medical
facts and nonmedical evidence.") (citing S.S.R. 98-6p, 1996 WL
374184, at *6); Mills v. Astrue, No. 2:11-cv-65, 2012 WL
2030093, at *16 (N.D. W.Va. Apr. 9, 2012) ("SSR 96-8p does not
require an ALJ to produce a detailed statement in writing—a true
'function-by-function' analysis"; rather, "a narrative
discussion of a claimant's symptoms and medical source opinions
is sufficient.")

16

The ALJ's RFC determination must be reviewed in its entirety to determine whether it was contradictory.  The ALJ found that plaintiff was limited to a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with expressly stated exceptions.[5]  The ALJ stated, in full:

> After careful consideration of the entire record, the undersigned find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) <u>except</u> the claimant requires a sit/stand option; stand 45-60 minutes before alternating to sitting for 45-60 minutes.  The claimant cannot climb ropes, ladders, or scaffolds.  The claimant can perform stooping on an occasional basis.  Due to pain and side effects of medication the claimant is limited to performing unskilled task.

(R. 16) (emphasis added).  By using the word "except," the ALJ distinguished how plaintiff's specific limitations differed from those involved with the ordinary range of sedentary work.  Plaintiff neither argues nor presents any authority to suggest that the ALJ was not permitted to tailor plaintiff's RFC determination to his particular limitations and needs.  Because the ALJ used the world "except" to distinguish plaintiff's

---

[5] The ALJ based his findings regarding these exceptions on several facts gleaned for the record.  For example, plaintiff testified that he serves as the head basketball coach for a youth team, and that he is able to "alternate between sitting and standing at the games and practice."  (R. 18.)  Furthermore, plaintiff engaged in tasks "involving moving furniture," could "walk[] up stairs and lift[] heavy objects," and had changed jobs to one that "involved manual labor."  (<u>Id.</u> at 18.)  Notably, plaintiff does not contest the RFC determination itself.

specific RFC from that generally described by S.S.R. 83-10, there is nothing inconsistent or contradictory in his decision. The ALJ accordingly did not err in making this finding.

The ALJ provided a thorough analysis of the medical and nonmedical evidence that supported his conclusion, and did not err in his application of the law.  Therefore, upon examination of the record as a whole, and without re-weighing the conflicting evidence, making credibility determinations, or substituting its judgment for that of the Acting Commissioner, the Court finds there is substantial evidence in the record to support the ALJ's conclusion and that there was no error of law.

## VI.   CONCLUSION

For the reasons set forth, the undersigned Magistrate Judge finds that the ALJ's decision is supported by substantial evidence and does not contain legal error.  Therefore, the Motion for Summary Judgment by defendant, Carolyn W. Colvin, Commissioner of Social Security, shall be GRANTED, and the Motion for Summary Judgment by plaintiff, Derrick Sodhi, shall be DENIED.  An appropriate Order shall be issued.


                                        /s/
                              _____
                              THERESA CARROLL BUCHANAN
                              UNITED STATES MAGISTRATE JUDGE

March 25, 2014
Alexandria, Virginia